**In re STANDARD STEEL SECTIONS, INC., Debtor.**

**Bankruptcy No. 95 B 21163 (ASH).**

United States Bankruptcy Court, S.D. New York.

April 8, 1996.

·Platzer, Fineberg & Swergold by Henry G. Swergold and Michele K. Jaspan, New York City, Proposed Attorneys for Committee of Unsecured Creditors.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C. by Howard B. Kleinberg, Garden City, NY, for Francis V. Liantonio as Successor Co–Trustee and Alvin L. Stern as Successor Co–Trustee.

### RULING ON CREDITORS' COMMITTEE APPLICATION TO RETAIN COUNSEL

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

On June 20, 1995 an involuntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code was filed against the debtor. The case was converted to Chapter 11 on July 11, 1995. After an evidentiary hearing the Court entered an order pursuant to 11 U.S.C. § 1104 for the appointment of a trustee, and the trustee was appointed on December 7, 1995. The trustee is proceeding to marshall and liquidate the assets of the estate in order to distribute the proceeds to creditors. The assets consist of a closed manufacturing plant, billed and unbilled accounts receivable and miscellaneous furniture and equipment.

On September 11, 1995 a Committee of Unsecured Creditors was appointed. By notice of presentment dated February 26, 1996 the Committee applied for Court approval of retention of Platzer, Fineberg & Swergold as attorneys for the Committee *nunc pro tunc* to February 9, 1996. The office of the United States Trustee signed a "no objection" legend on the proposed order of retention. Counsel for the co-trustees of certain trusts created for the benefit of members of the Hirschhorn family (the "Trusts"), creditors of the estate, objected to the Committee's application to retain counsel. The Trusts argue, in substance, that the normal role and responsibilities of a committee and its counsel have been rendered superfluous in this relatively simple liquidating Chapter 11 case because the interests of all creditors are satisfactorily represented by the Chapter 11 trustee and his counsel, acting in a fiduciary capacity for the estate as a whole.

Section 1103(a) of Title 11 states that "with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys ... to represent or perform services for such committee." Neither side has drawn the Court's attention to any decision by any court or other authority bearing on the issue. I conclude that it would be inappropriate to authorize the Committee to retain counsel at the expense of the estate under the circumstances presented here.

With one exception, no specific legal functions to be performed by proposed counsel on behalf of the Committee are identified in the Committee's application or reply to the objection. This is a simple liquidating Chapter 11 case. In a conference call proposed counsel for the Committee disclaimed any intent to take part in the process of billing the debtor's accounts and collecting the accounts receivable, a process which can and should be handled by the trustee, the trustee's counsel and specially-retained collection attorneys if appropriate. If professional assistance is necessary in connection with the sale of the plant and equipment, the trustee or the Committee can seek approval to retain professionals appropriate to that purpose, such as business brokers or auctioneers. The Com-

mittee does not need counsel to "adequately voice its concerns and advocate its positions" in connection with the winding up of this estate, as suggested in paragraph 11 of its Reply to the Trusts' Objection.

The only legal matter identified by the Committee as to which it seeks its own counsel and representation is the question of possible subordination of the Trusts' claims as creditors. Prior to commencement of the involuntary Chapter 7 case, the debtor was owned and managed by two Hirschhorn brothers, Richard and Stewart. The Trusts' claims arose from the fact that over time the brothers caused the Trusts (of which they were then the trustees, but not beneficiaries) to loan substantial amounts of money to the debtor to finance the ongoing and increasingly unsuccessful operations of the debtor, of which the brothers were sole shareholders. The Trusts' beneficiaries and successor trustees (or some of them) have objected strenuously to these loans.

The subordination issue pits two creditor constituencies against each other. The Trusts have purported claims substantially exceeding the aggregate claims of the other unsecured creditors, represented by the Committee. Undoubtedly the Committee has the right if it so chooses to retain and pay for counsel to advise and represent the unsecured creditors with respect to the question of subordination, just as the Trusts have the right to retain and pay counsel for that or any other purpose. The question is whether the cost of Committee counsel should be funded out of the assets of the estate or by the unsecured creditors represented by the Committee. If the Court approves the appointment of counsel for the Committee under section 1103(a) as an administrative cost of the estate, the result will be that the Trusts will inevitably wind up paying both the cost of their own counsel and, in whole or in part, the cost of the Committee's counsel. The subordination issue represents, in essence, a two-party or two-faction dispute over the division of the assets of this estate. Nothing in the Bankruptcy Code or in general principles of law or equity applicable in this country warrants shifting the legal expenses of one side to the

other in these circumstances. If additional facts warranting fee shifting under traditional legal or equitable principles are shown to exist, the matter can be revisited.

Accordingly, the Committee's application for an order approving the retention of counsel under 11 U.S.C. § 1103(a) is denied. Counsel for the Trusts will settle an order consistent with this decision.